FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA** -5 PM 3: 51
**SOUTHERN DIVISION**
U.S. DIST .... COURT
N.D. OF ALABAMA

**DRILL SOUTH, INC.,**                  ]
                                        ]
    Plaintiff(s),                    ]
                                        ]
    vs.                              ]    CV-96-N-2682-S
                                        ]
**INTERNATIONAL FIDELITY**               ]
**INSURANCE COMPANY,**                   ]
                                        ]
    Defendant(s).                    ]

ENTERED
SEP 5 1997

### **Memorandum of Opinion**

## I. **Introduction.**

In this Miller Act case, the original plaintiff, United States of America, for the use of

Miller Drilling Co., Inc. ("Miller Drilling"), brought claims against Drill South, Inc. ("Drill

South"), Enviro-Group, Inc. ("Enviro-Group"), and International Fidelity Insurance Company

("International Fidelity"), pursuant to 40 U.S.C. §§ 270a, 270b (the "Miller Act") and

Alabama law.  Drill South and International Fidelity each then brought crossclaims against

Enviro-Group, and International Fidelity filed a third-party complaint against Robert G.

Woodward, Jr. and Gayla S. Woodward.  The Clerk of Court entered the default of Enviro-

Group on February 27, 1997, and entered default judgments against Enviro-Group in favor

of both Miller Drilling and Drill South on April 7, 1997.  Upon receiving notification that

Miller Drilling's claims had been successfully mediated, the court dismissed Miller

Drilling's claims and Drill South's counterclaims on May 27, 1997.  The court then ordered

on June 9, 1997, that the parties be realigned such that Drill South is now the plaintiff, and

International Fidelity is now the defendant.

108

This matter is presently before the court on the issue of International Fidelity's liability for Enviro-Group's default judgments.[1] Upon due consideration, the court finds that International Fidelity is liable for the judgments in favor of both Miller Drilling and Drill South.

## II.    Statement of Facts.

This action arises from a construction project at the Redstone Arsenal in Huntsville, Alabama. Enviro-Group contracted with the United States to perform the construction, while International Fidelity issued payment and performance bonds on behalf of Enviro-Group, as required by the Miller Act. Drill South entered into a subcontract with Enviro-Group pursuant to which Drill South agreed to perform certain well drilling and installation services that Enviro-Group had contracted to perform for the United States. Miller Drilling, in turn, entered into a subsubcontract with Drill South to perform some of those well drilling and installation services that Drill South had contracted to perform for Enviro-Group.

Enviro-Group defaulted on its contract with the United States; therefore, the United States called the performance bond and demanded that International Fidelity complete the work. International Fidelity has assumed Enviro-Group's obligations.

Enviro-Group also defaulted on the subcontract with Drill South. Drill South completed all work required by the subcontract including additional work required by Enviro-Group, and Miller Drilling completed all work required by the subsubcontract.

---

[1] At the August 29, 1997, motion docket, both parties were specifically asked by the court whether the issue of the binding nature of default judgment against Enviro-Group was properly before the court for consideration. Both parties agreed that the issue was properly before the court to decide. Additionally, the parties conceded at the motion docket that a ruling that the default judgment is binding on International Fidelity would "subsume" the two pending motions for partial summary judgment and render them moot.

Enviro-Group, however, refused to pay Drill South, and Drill South refused to pay Miller Drilling.

## III.   Discussion.

Now that the court has entered default judgments against Enviro-Group in favor of Miller Drilling and Drill South, the issue remains as to International Fidelity's liability as surety for Enviro-Group on the default judgments.  Drill South asserts that International Fidelity agreed to be bound by the judgments.  First, Drill South argues that the Miller Act imposes on International Fidelity an agreement to be bound by a judgment rendered against Enviro-Group.  Second, Drill South contends that International Fidelity expressly agreed to be bound by such a judgment when it issued a bond providing for joint and several liability with Enviro-Group. *Drill South's Issue Memorandum* at 5.  Furthermore, Drill South asserts that International Fidelity is Enviro-Group's privy because the two entities share concurrent interests in the subcontract and, as such, is bound by a judgment against its principal. *Id.* at 6.

International Fidelity, on the other hand, argues that it is not bound by a *default* judgment against Enviro-Group because such a ruling would be "contrary to well-established case law" and would violate its rights to due process. *International Fidelity's Response* at 4.  International Fidelity contends that if the court were to hold it liable for an amount of damages supported solely by the affidavit of a Drill South representative, it would not have an opportunity to contest the amount of damages allegedly sustained. *Id*.

Drill South asserts in reply that International Fidelity's agreement of indemnification with Enviro-Group appoints International Fidelity as the attorney-in-fact for Enviro-Group

3

and grants International Fidelity the "'right to adjust, settle, or compromise any claim, demand, suit or judgment upon the [payment bond] . . . .'" *Drill South's Reply Brief* at 3-4 (quoting the agreement). Drill South argues that, as a result, International Fidelity had a choice with regard to the motion for default judgment — "either oppose the default judgment by proffering a defense on the merits, or waive its opportunity to present a defense." *Id.* at 6. The plaintiff contends that International Fidelity opted for the latter although it was given notice and opportunity to do otherwise at the hearing held on the motion for default judgment. *Id.* at 7-8.

The Miller Act requires a contractor on a federal construction project to furnish a payment bond to secure payment to all suppliers of labor and material. 40 U.S.C. § 270a(a)(2). A supplier who within ninety days after the last labor was performed or material delivered is not fully paid can bring suit on the bond upon giving notice to the general contractor. § 270b(a). The Miller Act is "highly remedial in nature" and is interpreted liberally to effectuate its purpose of protecting subcontractors and suppliers from nonpayment. *J.W. Bateson Co. v. United States ex rel. Bd. of Trustees*, 434 U.S. 586, 594 (1978); *United States v. Wiring, Inc.*, 646 F.2d 1037, 1042 (5th Cir. 1981). The purpose of a Miller Act payment bond is "to protect subcontractors and suppliers who provide labor and material for a federal project, because federally owned lands or buildings are exempt from the liens that would normally secure these parties' rights under state law." *United States ex rel. Pertun Constr. Co. v. Harvesters Group, Inc.*, 918 F.2d 915, 917 (11th Cir. 1990) (citing *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957)).

4

"The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby is a matter of federal . . . law." *F. D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc.*, 417 U.S. 116, 127 (1974). Courts uniformly hold that a surety is bound by a judgment against its principal[2] when it had full knowledge of the action and an opportunity to defend. *See Lake County ex rel. Baxley v. Massachusetts Bonding & Ins. Co.*, 75 F.2d 6, 8 (5th Cir. 1935); *Seaboard Surety Co. v. Westwood Lake, Inc.*, 277 F.2d 397 (5th Cir. 1960); *cf. Frederick v. United States*, 386 F.2d 481, 485 & n.6 (5th Cir. 1967) (holding that a judgment against a principal conclusively establishes the liability of a surety, as long as the surety had notice of the proceedings against the principal). The District Court for the Eastern District of New York explained the rationale behind such a rule:

> A surety cannot stand idly by with full knowledge of an action pending against its principal, permit a judgment to be taken against the principal, and later on, when an action is brought upon its bond, require the plaintiff to retry his case. This would result in two trials of the same issue. It would retard and not promote the administration of justice.

*United States ex rel. Vigilanti v. Pfeiffer-Neumeyer Constr. Corp.*, 25 F. Supp. 403, 404 (E.D.N.Y. 1938). However, the *Pfeiffer-Neumeyer* court held that the above-cited rule is inapplicable where a judgment of default is entered against the principal in an action in which the surety is also a party. *Id.* at 405. That court so held because, according to the facts of that case, the surety did not forgo its opportunity to defend *itself* against claims by

---

[2] Moreover, courts routinely hold that a Miller Act surety is bound by a judgment against its principal rendered by a tribunal of competent jurisdiction. *See, e.g., United States v. M.J. Kelley Corp.*, 995 F.2d 656, 661 (6th Cir. 1993) (holding that Miller Act surety is bound by arbitration award against the principal); *United States ex rel. Aurora Painting, Inc. v. Firemen's Fund Ins. Co.*, 832 F.2d 1150, 1151 (9th Cir. 1987) (holding that a surety on a Miller Act subcontract was bound by an arbitration decision later ratified by a state court).

5

the subcontractor; rather, it filed an answer denying the plaintiff's claims and its liability on such claims. *Id.* The *Pfeiffer-Neumeyer* court reasoned that "[t]his is not a case in which the sureties had the opportunity to defend, and failed to defend, an action which was brought against their principal." *Id.* The court apparently determined that because the surety was a defendant in the same action as its principal and, therefore, had its own "separate" interests as a named defendant, it had no reason (or, in the court's words, an "opportunity") to make a defense on behalf of its principal prior to the court's entering a default judgment against the principal. *See id.* On this basis, the *Pfeiffer-Neumeyer* court ruled that the default judgment against the principal could not be used as evidence of the surety's liability to the subcontractor on the bond. *Id.*

International Fidelity concedes that cases in which sureties have been bound by a judgment against a principal generally involve sureties that had knowledge of the proceeding against the principal and an opportunity to defend the action, but failed to do so. *See International Fidelity's Response to Issue Memorandum* at 3. International Fidelity argues, however, that in none of these reported cases was a *default* judgment entered against the principal in an action in which the principal and surety were sued together, and that this is a "critical distinction" that should be drawn by the court. *See id.* International Fidelity relies solely upon the *Pfeiffer-Neumeyer* decision. *See id.* at 4-5.

The *Pfeiffer-Neumeyer* decision appears to be the only one of its kind; the court can find no other reported case law on point. This court, however, finds the policy rationale contained in *Pfeiffer-Neumeyer*, and relied upon by International Fidelity, devoid of any basis in law or reason. It would be an anomaly to conclude that a surety *can* be held liable

6

under the general rule for standing idly by while its principal suffers an adverse judgment when the judgment is rendered in an action where the surety is not a party, and in the same breath conclude that the surety *can* stand idly by, without liability, and allow a default judgment to be rendered against its principal merely because the surety was a co-defendant to the action. In the former case, the surety is afforded much less opportunity to defend its interest than in the latter, where it is already a party, has full knowledge of the proceedings, and can freely oppose the judgment against its principal.

In its submission to the court and at the motion docket on August 29, 1997, Drill South argued that the Second Circuit decision of *Hutton Construction Co. v. County of Rockland*, 52 F.3d 1191, 1192 (2nd Cir. 1995), demonstrates that International Fidelity had an affirmative duty to defend Enviro-Group's default judgment. Interestingly, *Hutton* involved International Fidelity, the surety in this action, and involved the exact same form contract of indemnity. *See Hutton Constr. Co. v. County of Rockland*, Nos. 93-CIV-2465(LAP) & 87-CIV-4027(LAP), 1993 WL 535012, at *1-*2 (S.D. N.Y. Dec. 22, 1993). *Hutton* merely stands for the proposition, however, that the surety had the *right*, under the contract, to exercise all rights assigned to it under the contract, which included in *Hutton*, as here, the right "to adjust, settle, or compromise any claim . . . upon the Bonds." *Hutton*, 52 F.3d at 1192; Agreement of Indemnity at ¶13 ("Settlement"). When the surety in *Hutton* settled the bond claims against its principal, and the principal subsequently refused to stipulate to the case's dismissal, the court held that International Fidelity had the superior right to protect its interests under the agreement of indemnity, despite the principal's protestations to the contrary. *See Hutton*, 52 F.3d at 1192.

7

If the surety in *Hutton*--which was, coincidentally, International Fidelity--had the right and opportunity to protect its interests and did so, it seems highly illogical why this court should agree with such sound reasoning and at the same time hold that International Fidelity can stand idly by and refuse to protect its interests (here, a judgment setting the amount of recovery Drill South may obtain against International Fidelity's principal, Enviro-Group), when International Fidelity had full notice of the potential for the default judgment and possessed numerous opportunities[3] to defend the ultimate judgment. Against this background, the general rule is applicable in the instant case; namely, that a surety who is a party to the action is bound by a judgment, default or otherwise, against its principal, as long as the surety had notice and an opportunity to defend. *Lake County*, 75 F.2d at 8.

Here, International Fidelity had both adequate notice and an opportunity to defend against the default judgment of its principal, Enviro-Group. When Drill South filed its motion for default judgment against Enviro-Group, International Fidelity was faced with a choice: either oppose the default judgment by proffering a defense on the merits, or waive its opportunity to present a defense. In fact, on March 11, 1997, the court ordered that "any party wishing to be heard on the motion [for default judgment against Enviro-Group] shall file its submission prior to the close of business on March 26, 1997." On March 21, 1997, pursuant to the court's order, International Fidelity filed its response indicating its choice to not offer a defense after apparently concluding that a judgment against Enviro-Group

---

[3] *See infra* note 7 (discussing International Fidelity's "opportunities to defend").

8

would not be binding on it. In its filed response, International Fidelity relied upon *United States v. Maryland Cas. Co.*, 204 F.2d 912, 915 (5th Cir. 1953), and argued that

> [u]nder Alabama law, as applied by the United States Court of
> Appeals for the former Fifth Circuit, a judgment against a
> principal is without effect on its surety unless so provided by
> the contract of suretyship. . . . Accordingly, a default judgment
> in favor of [sic] Enviro-Group, Inc., as principal, is not binding
> on International Fidelity as surety.

*See International Fidelity's Response to Plaintiff's Motion for Default Judgment* at ¶2
(citing United States v. Maryland Cas. Co., 204 F.2d 912, 915 (5th Cir. 1953)).

However, International Fidelity omitted from its submission to the court that
*Maryland Cas. Co.* also recognized that Alabama law holds that a surety *is* bound by a
judgment against its principal if the surety is "either a party or a privy." *See Maryland Cas.
Co.*, 204 F.2d at 915 (quoting *Fireman's Ins. Co. v. McMillan*, 29 Ala. 147 (1856)). Here,
International Fidelity is both.

A party is one who is both named as a party to the action and subjected to the
court's jurisdiction. Restatement (Second) of Judgments § 34 (1980). Persons become
subject to a court's jurisdiction in one of several ways. One may voluntarily subject oneself
to the court's jurisdiction "by making an appearance or participating in the action in a
manner that has the effect of an appearance. In the absence of such a submission to the
jurisdiction of the court, to become a party a person must be served with process or its
equivalent...." *Id.* at comment a. "As to defendants, the fundamental requirements are
designation as a party, compliance with valid procedures designed to give notice of the
action, and a basis of jurisdiction. Most statements of this principle are negative: a person

9

is not bound absent compliance with these requirements." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4449 at 411-12 (1981). It is undisputed that International Fidelity is a party in this action. As such, International Fidelity is bound by the default judgment against its principal, Enviro-Group.

Though not necessary to the result reached here, the court also concludes that International Fidelity is a privy of Enviro-Group. Entities are in privity where their relationship is sufficiently close that a judgment against one *should* bind the other. *See Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986) (citing *Southwest Airlines Co. v. Texas Int'l Airlines Co.*, 546 F.2d 84, 95 (5th Cir. 1977)); *see also* Allan D. Vestal, *Preclusion/Res Judicata Variables: Parties*, 50 Iowa L. Rev. 27 (1964) (explaining that the term "privity" in itself does not state a reason for either including or excluding an entity from the binding effect of a prior judgment, but rather it represents a legal conclusion that the relationship between one entity and another entity is sufficiently close to afford application of the principle of preclusion). Here, pursuant to the Agreement of Indemnity, International Fidelity was Enviro-Group's attorney-in-fact [4] with respect to claims against bonds, which provided International Fidelity with the right to resolve all

---

[4] The Agreement of Indemnity appoints International Fidelity as the attorney-in-fact for Enviro-Group as follows:

> [Enviro-Group] hereby irrevocably nominate[s], constitute[s], appoint[s] and designate[s] [International Fidelity] as their attorney-in-fact with the right, but not the obligation, . . . in the name of [Enviro-Group] to make, execute, and deliver any and all additional or other assignments, documents, or papers deemed necessary and proper by [International Fidelity] in order to give . . . the full protection intended to be herein given to the surety under all other provisions of this Agreement. [Enviro-Group] hereby ratify[ies], and confirm[s] all acts and actions taken and done by [International Fidelity] as such attorney-in-fact.

Agreement of Indemnity at ¶18 ("Attorney in Fact").

actions against International Fidelity or Enviro-Group.[5] *See* Agreement of Indemnity at ¶13
& ¶18.

As Drill South has argued to the court, International Fidelity had the right and,
therefore, the opportunity to appear on behalf of Enviro-Group to defend against the default
judgment.[6] *See Drill South's Reply Brief Concerning the Preclusive Effect on International
Fidelity of a Default Judgment Against Enviro-Group* at 4.     The Agreement of
Indemnification provides International Fidelity with the authority to take all steps it deems
"necessary and proper . . . to give . . . full protection . . . to [International Fidelity]." *See*
Agreement of Indemnity at ¶18 ("Attorney in Fact"). As a Miller Act surety, International
Fidelity will no doubt be liable to subcontractors such as Drill South on the surety bond
because Enviro-Group, the principal, failed to make payments to Drill South on the Enviro-

_____

[5] The Agreement of Indemnity provides the following:

> [International Fidelity] shall have the right to adjust, settle, or compromise any
> claim, demand, suit or judgment upon the [payment bond]. . . .

Agreement of Indemnity at ¶13 ("Settlement").

[6] Moreover, even after International Fidelity had this opportunity to defend the default judgment on behalf
of its principal, Enviro-Group, the court entered an Order on March 28, 1997, setting a hearing for April 7, 1997,
to hear argument on "the issues of the entry of default judgment against Enviro-Group, any damages arising
therefrom, and whether such a default judgment is binding on International Fidelity as a surety." International
Fidelity was present at the April 7, 1997, hearing, yet denied liability on any default judgment that may be rendered
against Enviro-Group and failed to step in and defend Enviro-Group on the merits. At this hearing, the court
accepted a memorandum from Drill South on the effect of a default judgment as to the liability of International
Fidelity. The court entered an Order on April 7, 1997, entering a default judgment against Enviro-Group and
directing International Fidelity to respond to Drill South's memorandum, giving International Fidelity yet another
opportunity to be heard on the issue. On April 22, 1997, International Fidelity submitted to the court a responsive
memorandum and, relying upon the *Pfeiffer-Neumeyer* case discussed *supra*, argued that the present case "is
not a case in which the surety had an opportunity to defend." *International Fidelity's Response to Issue
Memorandum* at 6. The court also entertained argument from the parties on this issue on August 29, 1997, at a
motion docket. At the motion docket, International Fidelity argued in vague terms only that, at the April 7, 1997,
hearing, it had requested more time for more discovery in order to properly defend the action. However, neither
at that hearing nor at the August 29 motion docket did International Fidelity argue that it sought such discovery
for the purpose of defending the claims brought against Enviro-Group. Moreover, International Fidelity never filed
with the court a written request to extend discovery for the purpose of defending such claims. It seems clear to
the court, then, that despite all the aforementioned opportunities, together with the extended motion docket
hearing on August 29, 1997, where the parties argued this issue to the court, International Fidelity was provided
with more than ample opportunity to defend the default judgment against its principal, Enviro-Group, and to
defend its potential liability as to the binding nature of the default judgment.

11

Group-Drill South subcontract. The parties dispute, however, the measure of such liability. Despite the fact that a default judgment against Enviro-Group and in favor of Drill South would arguably "set" the amount that Drill South could recover from Enviro-Group (and, in turn, from International Fidelity up to the limits of the indemnity agreement), International Fidelity chose not to defend Enviro-Group, not to oppose Drill South's motion for a default judgment, and not to offer any evidence on the amount of Enviro-Group's liability to Drill South. Therefore, unlike the surety in *Pfeiffer-Neumeyer*, International Fidelity "had the opportunity to defend, and failed to defend, an action which was brought against [its] principal." *Pfeiffer-Neumeyer Constr. Corp.*, 25 F. Supp. at 404. As a result, and in light of the Miller Act's strong policy in favor of protecting subcontractors and suppliers from nonpayment, this court finds that International Fidelity is liable on the default judgment entered against Enviro-Group.

## IV.  **Conclusion.**

Accordingly, the court finds that International Fidelity is liable on the April 7, 1997, default judgments entered against Enviro-Group. This holding renders moot the parties' cross-motions for partial summary judgment and they will, for that reason, be denied. By separate order, the court will enter judgment in favor of Drill South and against International Fidelity in the amount of $151,760.30 principal; interest at the rate of one and one-half

12

percent per month since July 30, 1996; and attorney fees of $14,353.54. Entry of this final

judgment will conclude this litigation.

Done, this ____5th____ of September, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

13