FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA** SEP -1 AM 10:09
**SOUTHERN DIVISION**

U.S. DISTRICT COURT
N.D. OF ALABAMA

DRILL SOUTH, INC.,                    ]
                                      ]
        Plaintiff(s),                 ]
                                      ]
    vs.                               ]    CV-96-N-2682-S
                                      ]
INTERNATIONAL FIDELITY                ]
INSURANCE COMPANY,                    ]
                                      ]
        Defendant(s).                 ]



ENTERED

SEP 0'1 1999

**MEMORANDUM OF OPINION**

**I.    Introduction.**

The court currently has for consideration the defendant's motion for relief from judgment under Fed. R. Civ. P. 60(b)(4), filed June 28, 1999, and plaintiff's motion for sanctions, filed July 29, 1999. The issues have been thoroughly briefed, and the court heard oral argument on August 31, 1999. The issues are now ripe for resolution.

**II.   Factual Background.**

The facts underlying this litigation have been set out in the court's earlier opinions and will not be restated *in extenso* here. In this Miller Act case, the original plaintiff, United States of America, for the use of Miller Drilling Co., Inc. ("Miller Drilling"), a subsubcontractor, brought claims against its subcontractor Drill South, Inc. ("Drill South"), the general contractor Enviro-Group, Inc. ("Enviro-Group"), and Enviro-Group's surety International Fidelity Insurance Company ("IFC"), pursuant to 40 U.S.C. §§ 270a, 270b (the "Miller Act") and Alabama law. Drill South and IFC each then brought cross claims against Enviro-Group.  A review of the documents in this court's records indicates that on

173

December 12, 1996, a summons and cross-claim complaint were issued to "Robert G. Woodward, Jr., President of Enviro-Group, Inc.," and sent by certified mail to Mr. Woodward's home address. Mr. Woodward signed for delivery of the materials on December 14, 1996. The return receipt was received by the Clerk of this Court on December 19, 1996.[1/] As no answer was filed by Enviro-Group, the Clerk of Court entered default judgments against Enviro-Group in favor of both Miller Drilling and Drill South on April 7, 1997. Upon proof of damages, judgment was then entered for Drill South in the amount of $151,760.30 in damages and $14,353.54 in attorneys' fees.

Miller Drilling's claims were dismissed on May 27, 1997, due to a settlement between the parties, and the parties were realigned such that Drill South is now the plaintiff and IFC is now the defendant. On September 5, 1997, the court concluded that IFC, as Enviro-Group's surety, was bound by the default judgment which had been entered against Enviro-Group. Judgment was therefore entered against IFC in amounts which mirrored the default judgment entered against Enviro-Group. This judgment was later altered to account for an applicable set-off, and to include additional attorney's fees.

## III. Discussion.

The motions before the court represent two sides of the same coin. IFC asks the court to invalidate its prior judgment via the vehicle of Fed. R. Civ. P. 60(b)(4), by holding that both the default judgment entered against Enviro-Group and the subsequent judgment against IFC were and are void and unenforceable. Drill South contends that IFC is wrong.

---

[1/] The Clerk noted, on the court's docket, that a summons and complaint had been issued "for cross-claim defendant, Robert G. Woodward," on December 12, 1996, and had been returned executed on December 19, 1996.

So wrong, in fact, that sanctions should be imposed against IFC and its counsel. Drill South has therefore filed a motion requesting that the court do so. As IFC's motion preceded Drill South's both logically and temporally, the court will address that motion first.

## A.    IFC's Motion for Relief From Judgment.

Rule 60(b) of the Federal Rules of Civil Procedure provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment for the following reasons: . . . (4) the judgment is void." As a void judgment may be challenged at any time, the rule imposes no time limits on the filing of a Rule 60(b)(4) motion. However, a judgment may be considered void in only very limited circumstances. "A judgment is not void because it is erroneous." *William Skillings & Assoc. v. Cunard Transportation, Ltd.*, 594 F.2d 1078, 1081 (5th Cir. 1979).[2] It is void "only if the court which rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process of law." *In re Four Seasons Securities Laws Litigation*, 502 F.2d 834, 842 (10th Cir. 1974).

While IFC's arguments have shifted during the briefing of these motions, in their current incarnations IFC's claims appear to be these: 1) the summons and complaint served on Mr. Woodward appeared to be directed to him, not Enviro-Group. Therefore Enviro-Group was never properly served, this court never obtained personal jurisdiction over Enviro-Group, the default judgment against Enviro-Group is void, and the judgment against IFC based on that default is likewise void; 2) the summons delivered to Mr. Woodward

---

[2]All decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

3

indicated that a default "may" be taken, rather than "will" be taken, if no answer was filed. It was therefore inconsistent with the requirements of Fed. R. Civ. P. 4(a), was defective, and resulted in ineffective service on Enviro-Group, with the same results listed above; 3) there is no proof that Mr. Woodward was President of Enviro-Group at the time he was served. There is therefore no adequate proof that proper service was effected on Enviro-Group, and the service must be presumed to be defective, with the results already mentioned; and 4) established precedent prohibits the entry of a final default judgment against one co-defendant while claims against a related co-defendant are still proceeding. The default judgment against Enviro-Group and the resulting judgment against IFC are therefore void.

The court has some doubts about the suitability of the defendant's claims for treatment under Rule 60(b)(4). While the court is satisfied that it has jurisdiction over a Rule 60(b)(4) motion despite the pending appeal, *see, e.g., Lairsey v. Advance Abrasives Co.*, 542 F.2d 928 (5th Cir. 1976); *Ferrell v. Trailmobile, Inc.*, 223 F.2d 697 (5th Cir. 1955), the court is far from sure that the arguments IFC advances truly amount to claims that the judgment against it was void. IFC's principal arguments are all premised on the claim that the default judgment *against Enviro-Group*, not the judgment against IFC, was void for one reason or another. The court is not at all sure that it follows that the judgment against IFC, the *only* judgment challenged here, would also be void. IFC took an active part in the litigation, and had ample opportunity, both before and after default was taken against Enviro-Group, to raise the arguments it now belatedly advances. This court's judgment against IFC, whether correct or not, was thus based on sound personal and subject matter

4

jurisdiction and was awarded only after IFC was provided with more than sufficient notice and an opportunity to be heard. The court has difficulty understanding how it can be argued, then, that the judgment against IFC was so tainted as to be void.[3/] *In re Four Seasons Securities Laws Litigation*, 502 F.2d at 842 (only problems of jurisdiction or violations of due process can render a judgment void). However, because the court finds none of IFC's arguments persuasive, the court need make no final determination on this issue. The court will instead address each of IFC's substantive arguments in turn.

### 1.    Defects in the Summons.

IFC's first two arguments both relate to the form of the summons served on Mr. Woodward. The form of a summons is controlled by Fed. R. Civ. P. 4(a), which requires *inter alia* that the summons "shall . . . be directed to the defendant, and . . . notify the defendant that failure to [appear and defend] will result in a judgment by default against the defendant." IFC contends that the summons at issue here failed both these tests, because it was directed to "Robert G. Woodward, Jr., President of Enviro-Group, Inc." rather than to the cross-claim defendant "Enviro-Group, Inc." itself, and because in setting out the consequences of failure to appear the summons indicated that a default "may" result rather than the "will result" language used in the rule.

The court can make rather short work of the latter of these two arguments. For decades, this court has used the term "may" rather than "will" in its form summons. At the

---

[3/] IFC argues that the allegedly void judgment against Enviro-Group can be challenged in any proceeding and at any time. This may be true, but this does not necessarily mean that a third party seeking to challenge such a judgment may avoid the usual rules of procedure requiring an argument to be timely made, and instead wait until after final judgment has been entered against it to raise the issue for the first time.

direction of the court, the Clerk also strikes out "will" and substitutes "may" in any summons submitted to the Clerk by the parties. Tens of thousands of judgments have been issued based on summons with this language.[4/] The member judges of this court are fully satisfied that the term "may" is not only appropriate and effective in advising parties about the stiff penalties for failure to appear, but also more accurate in its description of the actual default process. This court uses the term "may" because many factors, including the effectiveness of service (at issue here), the discretion of the plaintiff, and to some extent the discretion of the judge, affect whether a default judgment will in fact be entered if no answer is timely filed. Default judgment is by no means automatic merely because a piece of paper labeled "summons"comes into the hands of a party and no answer is filed in the next twenty days. The language chosen by this court accurately describes the potential consequences of a failure to answer. In the court's view it is the delivery of this message to the defendant, not the use of the magic word "will," which Rule 4(a) requires. *See also* Fed. R. Civ. P. 1; *United Food & Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984) ("Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."). The summons issued by this court therefore satisfies the requirements of Rule 4(a) in this respect.

IFC's other argument regarding the form of the summons requires a little more discussion. IFC charges that the summons was directed to Mr. Woodward, in his individual capacity, rather than to Enviro-Group, the actual defendant. The court agrees that the

---

[4/]The court in fact suspects that defense counsel may have previously obtained judgments, even default judgments, based on summons issued in this form. The court hopes that they are not now contending that the judgments they have obtained for other clients should be considered "void."

address portion of the summons was somewhat ambiguous, and so will assume that the summons was technically defective. *But see U.S. v. Ayer*, 857 F.2d 881, 888 (1st Cir. 1988) (suggesting that a summons similar in form was not "misaddressed"). This is not the end of the inquiry however.

As already noted, Rule 4 is a flexible rule. *United Food & Workers Union*, 736 F.2d at 1382. As long as the basic due process requirements of notice are satisfied, the courts have been reluctant to allow defaulting defendants to hide behind technical defects in service and ignore the obligation to appear and defend. *See, e.g., Ma v. Continental Bank N.A.*, 905 F.2d 1073, 1075 (7th Cir. 1990) (noting that "not all of the technical requirements of service are sufficient grounds for a collateral attack" because "the sort of jurisdiction pertinent to a collateral attack depends on whether service is constitutionally adequate-- that is, whether the plaintiff uses a method reasonably calculated to produce actual notice"). For this reason, courts have refused to allow parties to escape service merely because they were misnamed in the summons or complaint, so long as "[t]he nature of [the] complaint and the parties allegedly responsible" are "adequately identified" in the summons and the "body of the complaint." *See Barsten v. Department of the Interior*, 896 F.2d 422, 423 (9th Cir. 1989). While the procedural circumstances under which the issue arose has varied from case to case, numerous examples of this general principle abound. *See, e.g., id.* (allowing complaint to proceed despite plaintiff's failure to name the Secretary of the Interior, the proper party defendant"); *Libertad v. Welch*, 53 F.3d 428, 440-41 (1st Cir. 1995) (failure to state the name of the person served at all); *Jackson v. Duke*, 259 F.2d 3, 6 (5th Cir. 1958) (amendment to correct error in defendant's name allowed to relate back); *Louisiana*

7

*Acorn Fair Housing v. Quarter House*, 952 F. Supp. 352 (E. D. La. 1997) (refusing to dismiss case despite error in defendant's name on summons); *Veremis v. Interstate Steel Co.*, 163 F.R.D. 543, 544-45 (N. D. Ill. 1995) (summons effective despite "incorrect name and address for the Defendant in the address section"); *Vorhees v. Cilcorp., Inc.*, 837 F. Supp. 395, 399 (M. D. Fla. 1993) (summons effective despite listing a defunct subsidiary of the defendant rather than the defendant itself as a party); *Crane v. Battelle*, 127 F.R.D. 174 (S. D. Cal. 1989) (summons effective despite reversing defendant's name); *Vega Matta v. Alvarez de Choudens*, 440 F. Supp. 246, 248-49 (D.P.R. 1977) (refusing to excuse default despite failure to list defendants in caption of summons as required by Rule 4). As one court aptly observed:

> A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant . . . it has fulfilled its purpose; and the courts should not put themselves in the position of failing to recognize what is apparent to everyone else.

*U.S. v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947).

The Eleventh Circuit has adhered to the basic principle represented by these cases, and indeed has "appl[ied] and extend[ed]" the principle to cases in which a default judgment has been entered. *Sanderford v. Prudential Ins. Co.*, 902 F.2d 897, 898 (11th Cir. 1990); *see also Vega Matta*, 440 F. Supp. at 248-49 (applying a similar analysis in refusing to set aside an entry of default). It is true, as IFC contends, that valid service is required for the court to obtain personal jurisdiction, and that a defendant does not waive a challenge to personal jurisdiction based on insufficient service merely by taking a default. *See Jones*

8

*v. Watts*, 142 F.2d 575, 576 (5th Cir. 1944); *Rockwell Int'l Corp. v. KND Corp.*, 83 F.R.D. 556, 559 (N.D. Tex. 1979); *In re Blutrich Herman & Miller*, 227 B.R. 53, 57-58 (Bankr. S.D.N.Y. 1998). However, the Eleventh Circuit has made it clear that this does not mean that a defendant with proper notice, served in a manner in "substantial compliance" with the requirements of Rule 4, can sit back and ignore an ongoing federal court action. Such a choice is made at the defendant's "own peril." *Sanderford*, 902 F.2d at 898-99. Indeed, if the court "determines that the summons is in substantial compliance with Rule 4 . . . and the defendant has not been prejudiced by the defect in the process, . . . the defense of insufficient process has been waived." *Id.* The court is therefore "not deprived of personal jurisdiction" to enter a default "because there is a minor defect in the process." *Id.*

The court is satisfied that the summons issued in this case substantially complied with the requirements of Rule 4(a). In essence, IFC contends that it appeared from the summons that Mr. Woodward was being served individually, and that service was not directed at Enviro-Group. The court agrees that the address section of the summons was not entirely clear, and that from that section alone it is difficult to tell whether the summons was served on Mr. Woodward in his individual capacity, or in his official capacity as president of and agent for the cross-claim defendant Enviro-Group.[9] However, any ambiguity was cleared up by the remainder of the summons and the cross-claim complaint, which made it clear that Enviro-Group, not Mr. Woodward, was a party defendant in the

---

[9] The court notes that, had it been clear that service was in Mr. Woodward's official capacity, the use of his name on the first line of the address section would not have been problematic. IFC apparently recognizes as much, holding up as an example of the service that should have been issued a summons directed to "Robert G. Woodward, Jr., Registered Agent for Service of Process for Enviro-Group." *See IFC's Reply* at 5-6 n.4 & Ex. 1 thereto.

9

action and the target of Drill South's cross-claim. "It is quite obvious from these facts that [Enviro-Group] was the intended defendant and that a reasonable, intelligent person would realize [Enviro-Group] was the defendant, despite the error in the address portion of the summons."[8] *Veremis*, 163 F.R.D. at 545; *see also Barsten*, 896 F.2d at 423 (defective summons sufficient where the body of the complaint identified the proper defendant). Any ambiguity generated by the address section of the summons was thus at most a "'hypertechnical defect,'" with no practical consequences, and so did not invalidate the service. *Mansfield v. Pierce*, 1998 WL 43304, at *6 (4th Cir. 1998) (unpublished) (refusing to invalidate service because the summons erroneously identified the capacity in which a corporate agent was served); *see also Jackson*, 259 F.2d at 6 ("The test should be whether, on the basis of an objective standard, it is reasonable to conclude that the plaintiff had in mind a particular entity or person, merely made a mistake as to the name, and actually served the entity or person intended; or whether plaintiff actually meant to serve and sue a different person.").

Mr. Woodward was served, by certified mail in compliance with Ala. R. Civ. P. 4.2(b)(1), with a summons and complaint making it clear that a claim had been brought against his company, Enviro-Group. The court therefore concludes that, if Mr. Woodward was in fact a proper agent to receive service for the company, Enviro-Group was served

---

[8]If this is true, it may be asked, how is it that the court's own Clerk failed to recognize this fact? *See supra* note 1. It appears to the court that a mistake was simply made, prompted by the volume of work which the Clerk's office must handle. That volume makes it tempting not to look beyond the address section of the summons in determining the proper object of the summons. The court presumes that a reasonable individual served with a federal summons would set aside a little more time to assess the materials before deciding that nothing need be done about the complaint.

in a manner substantially complying with Fed. R. Civ. P. 4 and this court's judgment against
Enviro-Group cannot now be challenged on the basis of insufficient service.

### 2.    Proof of Mr. Woodward's Agency Status.

According to Drill South, it served Enviro-Group under the Alabama rules of service
as permitted by Fed. R. Civ. P. 4(e)(1) and 4(h)(1).  State procedural rules permit service
on a foreign corporation by certified mail delivered to "the agent authorized by appointment
or by law to receive service of process . . . or [to] an officer or agent of the corporation."
Ala. R. Civ. P. 4(c)(6); *see* Ala. R. Civ. P. 4.2(b)(1) (providing for out of state service by
certified mail).  Thus service on Mr. Woodward should count as service on Enviro-Group
only if he is an"officer or agent" of the corporation and so qualified to receive service.[2]
Alabama law indicates that there must be some proof of the proper connection between the
individual served and the company in order to sustain a judgment.  *See, e.g, Hoffman v.
Alabama Distillery & Feeding Co.*, 27 So. 485 (Ala. 1900).  The comments to Ala. R. Civ. P.
4 therefore caution that "courts should be vigilant to protect the rights of defendants when
default judgment are entered on the basis of service upon an agent. . . .  [T]he court should
be satisfied that the person upon whom service was attempted was in fact the authorized
agent of the defendant before refusing to grant relief from a default judgment." *Committee*

---

[2]The court notes that, for the reasons already set out, service would not fail merely because Mr.
Woodward was not in fact the president of Enviro-Group, as the summons indicated, but instead held some other
corporate office or was otherwise qualified as an agent to receive service for the company. *See Mansfield v.
Pierce*, 1998 WL 43304, at *6 (4th Cir. 1998) (unpublished) (erroneously identifying the capacity in which a
corporate agent was served is a "hypertechnical defect" and does not invalidate service). If Mr. Woodward was
a proper agent to receive service of process, for whatever reason, then the service was valid for Rule 60(b)(4)
purposes.

*Comments to August 1, 1992 Amendments to Rule 4.1(c)(3).*[8] Thus in order to defend the

validity of its judgment against Enviro-Group, Drill South must prove[9] that Bob Woodward

held a position giving him the authority to receive service of process on behalf of Drill South

on December 14, 1996.

The evidence on this point is as follows:[10] Mr. Woodward was for some time the sole

owner of Enviro-Group.  Prior to March of 1996, Mr. Woodward served as chairman of the

board of his company.  In March, he also assumed the position of president.  *Depo. of*

---

[8] The court notes that both *Hoffman* and the *Committee Comments* were cited somewhat misleadingly by defense counsel at one point or another during the briefing on these motions. *Hoffman*, which stands, as IFC now argues, for the proposition that service on the "president" of a corporation is not effective without proof that he is in fact the corporate president, was originally cited in connection with IFC's argument that the summons was defective because it was directed to Mr. Woodward as president. *See IFC's Brief in Support of Emergency Motion for Relief from Judgment* at 9. *Hoffman*, which deals with an issue of proof, has nothing to say about such a formal defect. IFC asserted a clear *Hoffman*-type argument only in its reply brief. Likewise, IFC's counsel quoted the words of the *Committee Comments* as if they were written with Enviro-Group's particular circumstances in mind. They were not. The text of the comments make it clear that they were directed at changes in the mode of service for *individuals,* not corporations. The court agrees that these comments are nonetheless apropos to the analogous corporate circumstances, but wishes that counsel had explained the context of the committee's observations more clearly.

[9] There has been some dispute over the proper allocation of the burden of proof on a Rule 60(b)(4) motion challenging personal jurisdiction and proper service. While some courts have adhered to the general rule that a plaintiff bears the burden of proving proper jurisdiction and service, others have concluded that in the special circumstances of a Rule 60(b)(4) motion to vacate it is appropriate to shift the burden to the defendant. *Compare, e.g., Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398 (7th Cir. 1986) *with Triad Energy Corp. v. McNell*, 110 F.R.D. 382 (S.D.N.Y. 1986). *See generally Popper v. Podhragy*, 48 F. Supp. 2d 268, 271 n.5 (S.D.N.Y. 1998); Theresa L.Kruk, *Who Has the Burden of Proof in Proceeding Under Rule 60(b)(4) of Federal Rules of Civil Procedure to Have Default Judgment Set Aside on Ground that it is Void for Lack of Jurisdiction?*, 102 A.L.R. Fed. 811 (1991). However, in almost all cases the decisions placing the burden on the defendant have done so on the assumption that the defendant had actual notice of the on-going lawsuit, and nonetheless sat back and awaited a default before choosing to challenge jurisdiction. *See generally Kruk.* The court suspects that the burden must be placed on the plaintiff to show, at a minimum, that the defendant had notice of the ongoing action. Otherwise, no sort of jurisdiction could ever have attached. *See also Sanderford*, 902 F.2d at 899 (service in "substantial compliance" with the rules supports personal jurisdiction, but only if defendant has "actual notice of the action"). In this case, Mr. Woodward was served individually. Enviro-Group could only be said to have notice if Mr. Woodward's connection with the company was such that notice to him could be said to be notice to the company. The same type of relationship, however, would support a finding that service on him "substantially complied" with the rules. As the two inquiries are essentially the same, and the plaintiff clearly bears the burden of proof on the former, the court sees no need to determine who bears the burden of proof on the latter.

[10] At the direction of the court, Drill South and IFC both filed evidentiary submissions on this issue on August 23, 1999. All references are to documents contained in those submissions, unless otherwise indicated.

*Michael Lampert* at 12-13. In June of 1996, he sold most of the company's assets to a third party, with the understanding that Enviro-Group's on-going operations would be wrapped up and shut down over the next several months. *Plaintiff's Exh. 1 to Depo. of Robert Woodward, Jr.* However, it appears that the company has not become completely defunct. As of August of 1996, Mr. Woodward was still sole shareholder and president of the company. *Depo. of Robert Woodward, Jr.* at 7, 9, 16. Records of the Indiana Secretary of State currently indicate that the company has not been dissolved, that it filed its most recent annual report, and that Robert G. Woodward is listed as its only officer. *State of Indiana Office of Secretary of State Certificate of Fact*, issued August 13, 1999. Mr. Woodward has apparently continued to act on behalf of the company. For example, on April 20, 1998 he executed an agreement with IFC itself on behalf of Enviro-Group, apparently settling on-going litigation between the two companies. *See Agreement of Indemnity, Exh. B to IFC's Third Party Complaint*, filed November 5, 1996.

All of the available evidence suggests that Mr. Woodward was indeed an officer, agent, and owner of Enviro-Group on December 14, 1996. While, as IFC points out, none of the evidence establishes Mr. Woodward's status on that date directly, his ongoing relationship with Enviro-Group both before and after December of 1996 is more than enough to support an inference that he was in a position to accept service for the company at that time. IFC has come forward with no evidence suggesting otherwise.[11] The court therefore concludes that Drill South has carried its burden of proof on this issue.

---

[11]Indeed, it appears that IFC has continued to deal with Mr. Woodward as a representative of Enviro-Group. *See Agreement of Indemnity, Exh. B to IFC's Third Party Complaint*, filed November 5, 1996.

The court therefore concludes that Drill South served Enviro-Group in a manner sufficient to subject Enviro-Group to this court's jurisdiction, and Enviro-Group has waived any technical defects in service. This court's judgments against Enviro-Group and IFC therefore cannot now be challenged on the basis of improper service or want of personal jurisdiction.

### 3.    Default in Multi-Defendant Cases.

IFC's final argument is that the judgments against both it and Enviro-Group are void because a default judgment should not be entered against a principal while its surety remains an active co-defendant. This argument is built upon the venerable case of *Frow v. De La Vega*, 82 U.S. 552 (1872). In *Frow* the plaintiff, De La Vega, sued Frow and thirteen other defendants alleging a conspiracy to defraud him of title to a tract of land, and seeking to have his title declared superior to theirs. All the other defendants responded to the complaint but Frow did not, and a default judgment was entered against him adjudging that, at least as to Frow, title to the property stood with the plaintiff. *Id.* at 553. The plaintiff then went to trial against the remaining defendants, and lost. On appeal by Frow, the Court held that the default judgment was "unseemly and absurd [and] unauthorized by law," and could not stand. *Id.* at 554. Justice Bradley explained that it would not do for there to be "one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the" plaintiff's claims. *Id.* In order to avoid this "absurdity," Justice Bradley directed courts in such cases to enter a default but refuse to enter a final default judgment, and proceed with trial as to the remaining defendants. Then "if the suit should be decided

14

against the complainant on the merits, the bill will be dismissed as to all the defendants alike -- the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all." *Id.* However, to proceed as the court below had done, by entering "a final decree on the merits against the defaulting defendants alone, pending the continuance of the cause, would be incongruous and illegal." *Id.*

The precise limits of the *Frow* doctrine have been the topic of some debate. *See generally Days Inn Acquisition Corp. v. Hutchinson*, 707 So.2d 747, 749-50 (Fla. Dist. Ct. App. 1998) and cases cited therein. The Eleventh Circuit has applied the doctrine fairly broadly, suggesting that it should control "even when defendants are similarly situated, but not jointly liable." *Gulf Coast Fans, Inc. v. Midwest Elec. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984). IFC argues that, because it cannot be held liable as surety unless the primary liability of Enviro-Group is first established, the case easily meets the Eleventh Circuit's broad standard for the application of *Frow*. Because this court failed to follow the procedures mandated by *Frow*, IFC claims, the judgments against Enviro-Group and IFC are void. *See In re Ridgemont Appartment Assocs., Inc.*, 1990 Bankr. LEXIS 1100 (Bankr. N.D. Ga. 1990) (unpublished) (voiding judgment against surety under *Frow* because entered while claims against the principals were still proceeding). This court disagrees.

Despite the broad sweep of the *Frow* doctrine in the Eleventh Circuit, the court finds it inapplicable in this case. *Frow* and the cases following it, including *Gulf Coast Fans*, are premised on the idea that inconsistent adjudications by the court are unseemly and should be avoided. Some cases have also suggested that premature and inconsistent defaults may adversely affect the remaining parties. Regardless, "[t]he purpose behind the Frow rule

15

is to promote consistent verdicts." *Atlanta Gas Light Co. v. Semaphore Adver., Inc.*, 747 F. Supp. 715, 719 (S.D. Ga. 1990). Thus when there is no risk of inconsistent verdicts, "the rationale for the Frow rule is lacking." *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1257-58 (7th Cir. 1980); *see also* Charles A. Wright, et al., *Federal Practice & Procedure* § 2691, at 77 (3d ed. 1998). That is precisely the situation here.

No risk of inconsistent adjudications was posed in this case because, as the court has already held, IFC as surety was bound by the default entered against its principal Enviro-Group. There was no need for further consideration of the merits of the claims against Enviro-Group, and none was undertaken. Therefore no inconsistent result was possible. Under these circumstances, the logic of *Frow* is entirely inapplicable.[12]

The court notes that this circumstance sharply distinguishes this case from those cited by the defendant, and indeed from every case the court has been able to unearth. A number of courts have recognized that a party liable, vicariously or otherwise, for the conduct of another should not be defaulted out of court while the party primarily responsible is still actively contesting liability. *See, e.g., U.S. ex rel R.F. Hudson v. Peerless Ins. Co.*, 374 F.2d 942 (4th Cir. 1967) (defaulting surety not liable if principal is not); *In re Ridgemont Appartment Assocs., Inc.*, 1990 Bankr. LEXIS 1100 (same); *Curry v. Hillcrest Clinic, Inc.*, 653 A.2d 934, 943 (Md. 1995) (defaulting principal not liable if accused agent is not); *Akron Contracting Co. v. Oakland County*, 310 N.W.2d 874 (Mich. 1981)

---

[12]*Frow* was designed to protect the integrity of the judicial system, not to provide a second chance for parties who sat on their rights the first time around, as Enviro-Group and IFC did. Thus while IFC, a co-defendant, was certainly prejudiced by the early entry of default, the problem was at least in part IFC's own fault. Its injury was not the sort *Frow* was concerned with.

(defaulting surety not liable if principal is not); *Days Inn Acquisition*, 707 So.2d at 751; *Rawleigh, Moses & Co. v. Capital City Furniture Co.*, 177 S.E.2d 332 (N.C. Ct. App. 1970) (defaulting guarantor not liable if principal debtor is not). All of these cases, some of them cited by IFC, stand for the sensible principle that "default judgment may not 'be entered against a defendant who is only secondarily liable, until a successful termination of the suit against defendant primarily liable.'" *Peerless Inc.*, 374 F.2d at 945 (citations omitted). This case is precisely the other way around however, as it was not the surety but the principal, Enviro-Group, that defaulted. As principal, Enviro-Group is not only primarily liable but findings entered against Enviro-Group are binding in litigation against the surety. There is therefore no risk of inconsistency, and *Frow* simply does not apply.

The court therefore concludes that judgments were properly entered against Enviro-Group and IFC. IFC's motion for relief from judgment under Fed. R. Civ. P. 60(b)(4) will therefore be denied.

## B. Drill South's Motion for Sanctions.

Despite the court's disposition of IFC's motion, the court declines to enter sanctions against IFC in this case. The court acknowledges that IFC's arguments were strained, that they shifted somewhat as briefing progressed, and that some portions of IFC's briefs were at least unintentionally misleading. *See supra* note 7; *see also IFC's Brief in Support of Emergency Motion for Relief from Judgment* at 10 (citing the controlling precedent in *Sanderford*, discussed above, only for the proposition that "a technical error in form will not invalidate a summons"). More importantly, perhaps, IFC could and should have made the arguments it now advances years ago, and has had multiple opportunities to do so since.

17

It is hard to see IFC's current motion as anything more than a last ditch and desperate effort to halt the progression of this lawsuit, based on arguments scraped from the bottom of the barrel. The court therefore agrees with Drill South that there is something unsavory, and perhaps sanctionable, about some portions of the defendant's motion.

The court nonetheless finds sanctions inappropriate in this case. In part, this is because some of IFC's arguments were at least colorable, or involved unsettled law. In part, because despite its strained arguments, IFC did ultimately cite all of the relevant controlling authorities. Most significantly, perhaps, the court simply feels that this litigation has gone on long enough, and both sides have spilled more than enough blood over the relatively small stakes involved here. While the court would be inclined to place the majority of the blame on IFC, both parties and their counsel are responsible for the mess this case has become. IFC's motion is only the last chapter in a long history of overzealous litigation by both sides. The court finds it inappropriate to level sanctions on IFC merely because it got in the last lick. In any event, sanctions at this point would simply be one more thing for the attorneys to fight over at the appellate court level. The court has no desire to pour more gas on this particular fire.

Drill South's motion for sanctions will therefore be denied.

## IV. Conclusion.

Upon due consideration, the court will deny both IFC's motion for relief from judgment and Drill South's motion for sanctions. The court will enter an appropriate order in conformity with this memorandum of opinion.

18

Done, this _____ of August, 1999.

_____

EDWIN NELSON
UNITED STATES DISTRICT JUDGE